UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHEN C. RODAS,

               Plaintiff,                       **DECISION**

v.                                   **and ORDER**

TOWN OF FARMINGTON,                   11-CV-6095T

               Defendant.
_____

## INTRODUCTION

Plaintiff Stephen Rodas, ("Rodas"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), the New York State Human Rights Law, and 42 U.S.C. § 1983[1] against his employer Town of Farmington, ("Farmington" or "the Town") claiming that he was retaliated against for complaining of discrimination based upon sex. Specifically, Rodas claims that after he complained to his supervisor of discriminatory treatment, he was subjected to retaliatory behavior.

Defendant denies plaintiff's allegations and moves for summary judgment dismissing plaintiff's Complaint on grounds that plaintiff has failed to state a prima facie case of retaliation. Defendant claims that Rodas cannot establish that he engaged in any protected activity prior to filing a charge with the Equal Employment Opportunity Commission, that he suffered any retaliatory conduct

_____

[1]Plaintiff's complaint fails to allege any facts supporting a claim under this section, and therefore, I find that Plaintiff has failed to state a claim under 42 U.S.C. § 1983.

whatsoever, or that any alleged retaliatory conduct by the Town was causally connected to Rodas's protected activity.  For the reasons set forth below, I grant defendant's motion for summary judgment and dismiss plaintiff's complaint in its entirety.

## BACKGROUND

Plaintiff Stephen Rodas is a full-time employee of the Town of Farmington as a Maintenance Assistant for the Town's Water and Sewer Department.  Plaintiff claims that because he complained to the Town and filed a charge of harassment with the Equal Employment Opportunity Commission, he was retaliated against, inter alia, by having Town-owned work tools removed from the Town-owned truck which he used, by being assigned a labor intensive job, and by having his firearm confiscated by Ontario County Sheriff's deputies.

Rodas has been employed by the Town since 1996 and has worked as a Water and Sewer Maintenance Assistant since 1998. Affidavit of Jim Crane at ¶ 11, 12.[2]  In the performance of this job, Rodas was supervised by Jim Crane, the Superintendent of the District. Affidavit of Jim Crane at ¶ 12; see also Deposition Transcript of

---

[2]This Court notes that Plaintiff does not dispute a vast majority of the material facts as set forth by the Town.  Of 104 material facts submitted by the Town, Plaintiff takes issue with only 19. Fifteen of those disputed facts concern whether or not the Town investigated Plaintiff's complaints, which for the case at hand is irrelevant, since Plaintiff's claims are not premised on any alleged failure to investigate his complaints, but rather whether he was retaliated against for making them.  Of all the material facts cited herein, none were disputed by Plaintiff.

Stephen Rodas at p. 27.  As a Water and Sewer Maintenance Assistant, Rodas's job description included, among other things: installation, maintenance and repair of water mains, gates, hydrants and associated infrastructure; the investigation of complaints concerning water and sewer operation or use; and the maintenance of records and reporting of water and sewer infrastructure concerns to his supervisor. Affidavit of Jim Crane at ¶ 11; <u>see also</u> Exhibit G (Job description for a Water and Wastewater Maintenance Assistant) attached to Defendants' Motion for Summary Judgment.

Rodas's assignments were determined by Superintendent Crane, who retained the discretion to allocate the District's resources and labor to various functions and projects. Affidavit of Jim Crane at ¶ 5-6.  His assignments would periodically vary based upon the needs of the District and factors such as the weather, season, and budget. Affidavit of Jim Crane at ¶ 5-6.  Some assignments required Rodas to operate heavy machinery and vehicles belonging to the Town. Affidavit of Jim Crane at ¶ 11.  Additionally, if tools were needed in the maintenance of his job assignments, Rodas simply had to request that Superintendent Crane provide them. Deposition Transcript of Stephen Rodas at p. 125.

In the instant case, Rodas has asserted that he made complaints about a number of incidents that he characterized as sexual harassment. Deposition Transcript of Stephen Rodas at p. 34-

42, 65-70.   Among these incidents, Rodas cited a cartoon that briefly hung in a common area of the Sewer Plant depicting two men, one of whom was characterized as the Plaintiff, with the words, "you want to make out." Deposition Transcript of Stephen Rodas at p. 36-40.  Rodas admitted that in the absence of the words, "you want to make out," the cartoon would not be considered offensive. Deposition Transcript of Stephen Rodas at p. 39.  Rodas also claimed that the appearance of the words "Steve's gay" written in the dirt on a Town fuel tank was an act of sexual harassment. Deposition Transcript of Stephen Rodas at p. 43-44.

Rodas alleges that he verbally complained to Superintendent Crane about the existence of the cartoon and the writing on the fuel tank in September 2009 and January 2010, respectively. Deposition Transcript of Stephen Rodas at p. 38-40, 42-45.  Rodas also mailed a letter dated February 9, 2010 to Town Supervisor Ted Fafinski and members of the Town Board, stating that he had complained to Superintendent Crane in September 2009 and January 2010, about the aforementioned cartoon and writing in the dirt on the fuel tank. Exhibit Q (Written complaint by Plaintiff to Ted Fafinski) to Defendants' Motion for Summary Judgment.  The letter also raised a number of issues unrelated to sexual harassment including that Rodas was not issued a Town cell phone, that Rodas had not been invited to the "water department clam bake," and that

Rodas had been subjected to slander. <u>See</u> Exhibit Q to Defendants' Motion for Summary Judgment.

Rodas also submitted written complaints to the Town in the form of two charges of retaliation filed with the Equal Employment Opportunity Commission on April 23, 2010 and in June 2010. <u>See</u> Exhibit R (Plaintiff's charge of retaliation filed with the EEOC) to Defendants' Motion for Summary Judgment; <u>see also</u> Deposition Transcript of Stephen Rodas at p. 54.

Rodas alleges a series of retaliatory actions by the Town based upon his purported verbal complaints to Superintendent Crane in September 2009 and January 2010.  <u>See</u> Deposition Transcript of Stephen Rodas; Exhibit V (Plaintiff's Complaint) to Defendants' Motion for Summary Judgment at ¶ 16; Exhibit W (Plaintiff's Responses to Defendant's First Set of Interrogatories) to Defendants' Motion for Summary Judgment at 7-11.

Rodas alleges that in March 2010, the Town retaliated against him for his complaints by removing some tools from the truck that he typically used in the performance of one of his assignments. Deposition Transcript of Stephen Rodas at p. 120-21.  The tools in question were typically stored in a different truck other than the one that Rodas was using. Affidavit of Jim Crane at ¶ 39-41.  Rodas had "accumulated [them] through time" in the truck he typically used, although they were not his personal tools. Affidavit of Jim

Crane at ¶ 40;   Deposition Transcript of Stephen Rodas at p. 122-23.

Rodas alleges that he was reassigned to fire hydrant maintenance duties in April 2010 in retaliation for his complaints. Deposition Transcript of Stephen Rodas at p. 71.  Rodas admitted that these duties could fall within his job description, that he knew of other District employees who had done the same work in the past, and that the maintenance was necessary work. Deposition Transcript of Stephen Rodas at p. 80-84.  Rodas stated that he had a problem with the reassignment because of "the knowledge that [he] had in construction," although he admitted that he had no such distaste for his other assignments, most of which did not involve construction or heavy equipment.  Deposition Transcript of Stephen Rodas at p. 88, 90-91, 93-94.

Rodas also alleges that in May 2010, the Town retaliated against him when the Ontario County Sheriff's Department confiscated his pistol and revoked his pistol permit. See Exhibit V to Defendants' Motion for Summary Judgment at ¶¶ 20-26; Exhibit W to Defendants' Motion for Summary Judgment at 8-9.  Rodas concedes that his permit was revoked as the result of hearings conducted by a judge at the Ontario County Courthouse and that no individual from the Town was involved in the hearings. Deposition Transcript of Stephen Rodas at p. 98-99, 112-13.  Rodas also admitted at his deposition that his pistols were physically confiscated by the

Ontario County Sheriff's Department (not the Town), that the confiscation of his pistols and revocation of his permit was never discussed with him by any Town official, and that neither had any effect on his job. Deposition Transcript of Stephen Rodas at p. 115-20. Additionally, Rodas alleges that the denial of several of his Freedom of Information requests made to the Ontario County Sheriff's Department in connection with the pistol permit revocation, was retaliatory. Deposition Transcript of Stephen Rodas at p. 158-59.

Rodas alleges that the Town also retaliated against him by excluding him from what he characterized as a heavy-equipment "rodeo" or a "fun day" that took place on September 16, 2010, shortly after he returned to work from medical leave. Deposition Transcript of Stephen Rodas at p. 127-30. He also alleges that the display of pictures from this event in the Town break room was retaliatory. Deposition Transcript of Stephen Rodas at p. 127-30, 141-44. This event was a trade show-style event that permitted some District employees to inspect and operate different pieces of heavy machinery associated with the water industry, but it was not a training event. See Affidavit of Jim Crane at ¶ 49; Deposition Transcript of Stephen Rodas at p. 129. With regard to the picture of the event that Rodas claims was hung in the workplace as a measure of retaliation, Rodas admits that he has no idea who posted the picture, and he admits that he was not referred to in the

picture, stating only that the presence of the picture was offensive to him. Deposition Transcript of Stephen Rodas at p. 143-44.

Plaintiff also alleges that his January 31, 2011 suspension without pay was retaliation for his complaints to the Town. On January 31, 2011, the Ontario County Sheriff's Department was called to the Sewer Plant after an employee reported that Rodas had called her and had spoken to her in an intimidating manner. Affidavit of Jim Crane at ¶ 21. A police report was made, and Superintendent Crane escorted Rodas off the premises, suspending him with pay pending the outcome of the investigation. See Exhibit L (Police Report by Deputy Drake, dated January 31, 2011) to Defendants' Motion for Summary Judgment; Affidavit of Jim Crane at ¶ 22. Rodas concedes that he was never disciplined for his conversation with the employee and that during his period of suspension, he never suffered the loss of any wages. Deposition Transcript of Stephen Rodas at p. 149, 152.

Rodas alleges that in retaliation for his complaints, he was not assigned to work on water main breaks in March and November 2011. Exhibit W to Defendants' Motion for Summary Judgment at 10-11. Rodas concedes that he was engaged in other assignments at the time and that his wages were not affected. Deposition Transcript of Stephen Rodas at p. 131-37.

Rodas also alleges that he had been subject to retaliation for his complaints by the appearance of a machete in a windowsill of the employee break room at the Sewer Plant.  Deposition Transcript of Stephen Rodas at p. 155.  Rodas testified that he did not know who owned the machete, nor who had placed it in the windowsill, or why the machete had been placed there.  Deposition Transcript of Stephen Rodas at p. 155-56.  Rodas also testified that he did not mention the presence of the machete to anyone.  Deposition Transcript of Stephen Rodas at p. 156-57.

Finally, Rodas alleges that in retaliation for the complaints he made in 2010, he had received "little to no overtime" since 2003, a period nearly seven years before his alleged protected activity.  Deposition Transcript of Stephen Rodas at p. 161-62.

Despite all of his allegations of retaliation, Rodas admitted that he had not lost any wages in retaliation for his discrimination complaints.  Deposition Transcript of Stephen Rodas at p. 162. In fact, since his complaints, his pay had increased, he was never disciplined or subject to an administrative hearing, and he remained in the same job position without any loss of benefits. Deposition Transcript of Stephen Rodas at p. 160-61.

**DISCUSSION**

I.   Defendant's Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  <u>Scott</u>, 550 U.S. at 380 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

II.  <u>Plaintiff has failed to establish a Prima Facie Case of Retaliation</u>

Plaintiff claims that he was retaliated against by the defendant for complaining of gender discrimination.  He claims that after he complained of a hostile work environment based on sex, tools were removed from his work truck and that he was assigned to what he believed was demeaning and labor-intensive work, that he had his personal firearm confiscated from him and his pistol permit revoked, that he was not invited to a heavy equipment "rodeo," and that he was suspended with pay pending an investigation concerning a reported dispute with a co-employee.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant;

(2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2nd Cir. 1995) (citations omitted). Should the plaintiff state a claim for retaliation, the defendant may then articulate a non-discriminatory, legitimate reason for taking the action complained of, and then the burden shifts to the plaintiff to show that the employer's articulated reason is both untrue and a pretext for the true retaliatory motive. Id.

> A. Plaintiff has failed to allege that he engaged in a protected activity under Title VII, prior to filing a charge with the Equal Employment Opportunity Commission in April 2010.

Title VII prohibits retaliation by an employer against an employee in cases where the employee has engaged in protected activity under the statute. "Protected activity" includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII. 42 U.S.C. 2000e-3(a). See also, Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2nd Cir., 2000)("The term 'protected activity'

refers to action taken to protest or oppose statutorily prohibited discrimination.")  Specifically, Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e-3(a).

In the instant case, plaintiff has failed to establish that he engaged in a protected activity under Title VII, until he filed a charge with the Equal Employment Opportunity Commission on April 23, 2010.  Although plaintiff claims that he complained to his supervisor, Jim Crane, in September 2009 about an offensive cartoon that was allegedly placed in full view near the employee time clock and that in January 2010 about the words "Steve's Gay" written in the dirt accumulated on the town fuel tank, neither of these complaints suggest that the plaintiff complained of discrimination based upon his sex(or upon any other protected characteristic under Title VII).  The same is also true of plaintiff's written complaint to Ted Fafinski in February 2010 that summarized all of his alleged prior discriminatory complaints.

Although a plaintiff need not explicitly allege a violation of Title VII in making a complaint about working conditions to be considered protected activity, (See Kelley, 520 F.Supp.2d at 403

(employee not required to use "legal terms or buzzwords" when complaining of discrimination)) the plaintiff must complain of discrimination in sufficiently specific terms to put the employer on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by Title VII. International Healthcare Exchange, Inc., 470 F.Supp.2d at 357. Participation in a protected activity occurs only where the plaintiff has a "good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." Kessler v. Westchester County Dep't of Social Services, 461 F.3d 199, 210 (2d Cir. 2006) (quoting McMenemy v. City of Rochester, 241 F.3d 279 (2d Cir. 2001)).

As a matter of law, a reasonable, objective belief that an employee is complaining of sex discrimination cannot arise simply because the behavior in question touches on the issue of sex. Oncale v. Sundowner Offshore Services, 523 U.S. 75 (1998); see also Dottolo v. Byrne Dairy, Inc., 2010 WL 2560551 (N.D.N.Y., June 22, 2010)(where the court found that the plaintiff could not have had a good-faith and objectively reasonable belief that he had been harassed where he had been subject to a single incident with sexual overtones).

Here, Rodas claims that he complained of being sexually harassed, however neither Rodas's complaints to his supervisor, nor

his written complaint to the Town constitute protected activity. At no time did Rodas allege that he was being treated differently because he was a man, or that Crane treated him or other men differently because of their gender. Under an objective standard, Rodas could not have had a good-faith, objectively reasonable belief that he was opposing discrimination based upon his sex by complaining about isolated incidents that (at best) had sexual undertones. Abeln v. Ultra Life Batteries, 2009 WL 857497, at 1-3 (W.D.N.Y., Mar. 30, 2009)(Larimer, J.).

Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII. See Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C.Cir., 2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no allegation that the treatment was motivated by a discriminatory animus). See also, Ochei v. Coler/Goldwater Memorial Hosp., 450 F.Supp.2d 275, 287 (plaintiff's general complaints about her working conditions did not constitute engaging in a protected activity where plaintiff did not allege that she was a victim of discrimination); McMillan v. Powell, 526 F.Supp.2d 51, 55 (D.D.C., 2007)(employee's complaints regarding supervisor's negative attitude towards her was not protected activity where the complaints failed to allege that discrimination was the basis for

supervisor's attitude); <u>International Healthcare Exchange, Inc. v.
Global Healthcare Exchange, LLC</u>, 470 F.Supp.2d 345, 357 (S.D.N.Y.,
2007)(to be considered protected activity, the employee's complaint
must put the employer on notice that discrimination prohibited by
Title VII is occurring); <u>Holt v. Roadway Package Systems, Inc.</u>,
506 F.Supp.2d 194, 206 (W.D.N.Y., 2007)(Larimer, J.)(employee's
claim that supervisor was "out to get him" did not constitute
protected activity as complaint did not allege discriminatory
animus for supervisor's actions).

It is uncontroverted that Plaintiff's filing of a charge of
retaliation with the Equal Employment Opportunity Commission
constitutes a protected activity. <u>See</u> Defendant's Reply Memorandum
of Law in Further Support of Motion for Summary Judgment at 2; <u>see
also</u> <u>Monroe v. Xerox Corp.</u>, 664 F.Supp.2d 235 (W.D.N.Y.
2009)(Siragusa, J.).

Because plaintiff has failed to establish that he engaged in
any protected activity with respect to his employment complaints,
plaintiff has failed to establish a prima facie case of retaliation
for any actions that took place before filing his charge with the
Equal Employment Opportunity Commission in April 2010.

      B.   Plaintiff has failed to establish that he was subjected
          to an adverse employment action or actions which would
          dissuade a similarly-situated reasonable employee from
          making a charge of discrimination.

To state a prima facie case of retaliatory discrimination, in
addition to establishing that he or she engaged in protected

activity, a plaintiff must also establish that he or she suffered an adverse employment action, or was subjected to action that would dissuade a reasonable worker from making or supporting a charge of discrimination.  <u>Burlington Northern & Santa Fe Railway Co. V. White</u>, 548 U.S. 53, 68 (2006). In the instant case, plaintiff has failed to establish that any adverse employment action was taken against him or that any action that would dissuade a reasonable employee from making or supporting a charge of discrimination was taken against him.

I find that the plaintiff has failed to establish that he engaged in any protected activity with respect to his employment complaints made in September of 2009 and January and February of 2010.  Even assuming that the plaintiff could establish that he engaged in a protected activity, I find that for both the periods before and after his Equal Employment Opportunity Commission charge, he has failed to establish that he was subjected to any adverse employment action, or that he was subject to any act that would dissuade a reasonable employee from making a claim of discrimination, as a result of engaging in protected activity.

Here, numerous employment actions, bearing directly on the case at hand, have been found as a matter of law not to rise to the level of "adversity" required for a retaliation claim. Generally speaking, ostracism, "shunning," or the exclusion of an employee from non-essential office functions, cannot rise to the level of

"material adversity" required by Burlington. See Davis v. Verizon Wireless, 389 F.Supp.2d 458, 478 (W.D.N.Y. 2005)(Larimer, J.)("Menacing looks, name calling, or being shunned by coworkers does not constitute an adverse employment action. Nor does exclusion from meetings); see also Mabry v. Neighborhood Defender Service, 769 F.Supp.2d 381, 399(S.D.N.Y. 2011) (exclusion from management meetings); Chan v. NYU Downtown Hosp., 2006 WL 345853, at **8-9 (S.D.N.Y., Feb. 14, 2006) (exclusion from meetings and office "social events").

The Southern District of New York has held that contacting the police in response to an employee's actions is not an adverse employment action, even if it may cause a plaintiff "embarrassment." Uddin v. City of New York, 2009 WL 2496270, at *17 (S.D.N.Y., Aug. 13, 2009). Additionally, suspension of an employee with pay pending an investigation, without more, does not amount to an adverse action. See Joseph v. Leavitt, 465 F.3d 87, 90-91 (2d Cir. 2006) (collecting similar Circuit Courts of Appeals holdings); Brown v. City of Syracuse, 673 F.3d 141, 150-51 (2d Cir.2012).

The Plaintiff has failed to allege that any adverse employment action was taken against him at any time. He has failed to allege that he was transferred, demoted, fired, or that his pay or any benefits were reduced in any way. Moreover, several of the acts that plaintiff complains of, including denial of overtime

opportunities, occurred prior to his complaints, and therefore cannot be construed as retaliatory actions.  For the remaining claims, Plaintiff fails to raise any issues of fact as to the absence of any injury resulting from the actions. This is true for the removal of the town-owned tools, the reassignment to hydrant duty (a duty found within his job description), the confiscation of his pistol permit by a separate entity from the Town, his exclusion from the heavy equipment "fun day," his January 31, 2011 suspension, his exclusion from working on water main breaks, and the appearance of a machete in the windowsill of an employee break room.

Even under the broad standard in Burlington, the acts complained of here are not "adverse," and therefore, Rodas cannot premise a prima facie claim of retaliation on them.

III. State Law Claims

Claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (2nd Cir. 1996).  See Haywood v. Heritage Christian Home, Inc., 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed by McDonnell Douglas standard.).  Accordingly, for the reasons stated above, I hereby grant defendant's motion to dismiss plaintiff's state law retaliatory discrimination claims under the New York Human Rights Law.

## **CONCLUSION**

For the reasons set forth above, I grant defendant's motion for summary judgment and dismiss plaintiff's Complaint in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     January 16, 2013
           Rochester, New York